464 So.2d 856 (1985)
Beverly Cavallier BERNARD, et al.
v.
Clifton RICHOUX, et al.
No. 84-CA-346.
Court of Appeal of Louisiana, Fifth Circuit.
February 11, 1985.
*857 John W. deGravelles, Dué, Dodson, deGravelles, Robinson & Caskey, Baton Rouge, for plaintiff-appellant.
John H. Musser, IV, Longenecker & Musser, New Orleans, for defendants-appellees Bayou State Sec. Services, Inc. and Midland Ins. Co.
John C. Reynolds, C. William Bradley, Jr., Lemle, Kelleher, Kohlmeyer, Hunley, Moss & Frilot, New Orleans, for defendants-appellees Monsanto Co. and Ins. Co. of North America.
Before BOWES, CURRAULT and GAUDIN, JJ.
BOWES, Judge.
Plaintiff appeals the jury verdict and accompanying judgment denying her claim for damages from defendants. We affirm the actions of the trial court.
This case arises out of a tragic incident which occurred on July 15, 1981, in which defendant Clifton Richoux killed his wife, Sharon Richoux, and her trucking companion, Jessie Bernard. The killings took place on the grounds of Monsanto Company's Luling, Louisiana, plant.
Subsequent to the incident, defendant Richoux was indicted on two counts of first degree murder by a St. Charles Parish grand jury. Richoux was allowed to plead guilty to two counts of manslaughter and is now serving two, consecutive, twentyone year sentences in Angola.
*858 Betty Bernard (improperly referred to in pleadings as "Beverly"), Jessie Bernard's widow, filed suit on her own behalf and on behalf of the couple's minor child against Clifton Richoux, Monsanto Company, Insurance Company of North America (Monsanto's insurer), Bayou State Security Services, Inc., and Midland Insurance Company (Bayou's insurer). All defendants were served with citation and petition. Monsanto, I.N.A., Bayou and Midland answered; Clifton Richoux made no appearance on the record. Betty Bernard failed to take a preliminary default against Clifton Richoux, and in that procedural posture the case was tried to a 12-person jury on March 13-15, 1984.
The jury concluded that neither Monsanto nor Bayou breached any duty owed to Jessie Bernard, and further that both Clifton Richoux and Jessie Bernard were "at fault in causing the death of Jessie Bernard."
Because plaintiff failed to enter a preliminary default against Clifton Richoux, no judgment was rendered against him. On March 20, 1984, the district judge signed the judgment dismissing Monsanto, I.N.A., Bayou and Midland with prejudice and at plaintiff's cost.
Appellant's motion for a new trial was denied on March 29, 1984, and this devolutive appeal followed.
Appellant assigns the following as specifications of error:
I. The trial court erred in failing to exclude for cause certain jurors who had employment ties which made them obviously unable to render an impartial verdict.
II. The trial court erred in not allowing the use of peremptory challenges after the jury had been empaneled but before the jury had been sworn.
III. The absence in the record of certain jurors' and prospective jurors' bench discussions and the absence of other discussions between the trial judge and trial counsel regarding the allocation and use of peremptory challenges requires that this matter be remanded back to the trial court for a jury trial, in that this Honorable Court cannot render an opinion on the issues raised in this appeal with a grossly incomplete record.
Appellant's first allegation of error is based upon the trial judge's denial of two challenges for cause which plaintiff claims resulted in an early exhaustion of her peremptory challenges and thereby forced her acceptance of an employee of a defendant onto the jury. The two members of the venire involved were Martha M. Roach and James L. Pumphrey. Ms. Roach was challenged for cause because she worked for an insurance company (although not one of the companies involved in the suit) and Mr. Pumphrey because he was, at that time, employed by Monsanto and knew some of the witnesses who were to testify. Both of these challenges for cause were denied by the trial judge. Ms. Roach was then challenged peremptorily by plaintiff, but being out of peremptory challenges, Mr. Pumphrey was empaneled.
La.C.C.P. art. 1765 states:
A juror may be challenged for cause based upon any of the following:
(1) When the juror lacks a qualification required by law;
(2) When the juror has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial;
(3) When the relations whether by blood, marriage, employment, friendship, or enmity between the juror and any party or his attorney are such that it must be reasonably believed that they would influence the juror in coming to a verdict;
(4) When the juror served on a previous jury, which tried the same case or one arising out of the same facts;
(5) When the juror refuses to answer a question on the voir dire examination on the ground that his answer might tend to incriminate him.
*859 In State v. Sylvester, 400 So.2d 640 (La.1981),[1] our Supreme Court elucidated thusly:
Where an accused has exhausted all of his peremptory challenges before completion of the panel, he is entitled to complain on appeal of a ruling refusing to maintain a challenge for cause made by him. He need only show two things to obtain reversible error: (1) that the trial judge erred in refusing to maintain a challenge for cause by him; and (2) that he exhausted all of his peremptory challenges. He need not make the additional showing of injury resulting from the court's action by forcing him to accept the challenged juror. The trial judge is vested with broad discretion in ruling on a challenge for cause which ruling will not be disturbed on appeal absent a showing of abuse of that discretion.
Last year, the Supreme Court, in State v. Harper, 430 So.2d 627 (La.1983), explained:
The constitutional standard of fundamental fairness requires that a defendant be judged by a panel of impartial and unbiased jurors. This does not mean, however, that they must be totally ignorant of the facts and issues involved. State v. Willie, 410 So.2d 1019 (1982); State v. Bell, 315 So.2d 307 (La.1975). In some instances we have determined that a juror, who has read or heard about the case, can sufficiently lay aside his impression or opinion of defendant's guilt or innocence and render a verdict based on the evidence presented in court. See most recently, State v. David, 425 So.2d 1241 (La.1983). Usually it is incumbent upon the defendant "to demonstrate the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality." State v. David, supra... and most recently, in State v. Monk, 454 So.2d 421 (La.App. 3rd Cir.1984), our brothers of the Third Circuit, with whom we agree, stated:
There is a presumption that a juror's answers on voir dire are truthful. Irvin v. Dowd, supra.[[2]] The trial judge is vested with broad discretion in ruling on a challenge for cause which ruling will not be disturbed on appeal absent an abuse of that discretion. State v. Sylvester, [supra]
Using the rationale of State v. Sylvester, supra, since appellant had not exhausted all her peremptory challenges at the time of the ruling on Ms. Roach and did challenge Ms. Roach peremptorily, appellant's complaint is limited to the ruling on juror Pumphrey. The voir dire examination of Mr. Pumphrey reveals the following:
MR. deGRAVELLES:
Mr. Pumphrey, one thing that you said that I want to make sure I understood. You said that you knew Jessie Bernard's side and you knew Monsanto's side. I assume you meant by that that you would be fair to both sides. The thing that concerns me, you do know apparently something about it because you worked at Monsanto, and there were people that talked about it after it happened, and you were part of these conversations about it; is that correct?
MR. PUMPHREY:
I work in the area that he was loading the materials, the materials he was hauling. That's what I knew of him.
MR. deGRAVELLES:
And I imagine when you came back to work, there was plenty of talk about it around the plant.
MR. PUMPHREY:
Yes.
*860 MR. deGRAVELLES:
Now, I made this point earlier. What may have been said, you know and I know, when you have some incident like that, there's tons of talk. Some of it might not be accurate. You don't know the source, and you don't know if it's a good source or a bad source, but you do a lot of talking about it.
What the Judge is going to ask you to do as a juror, what I'm asking you to see if you can do, is to put aside anything you may have heard about this, put that aside and listen only to what comes from the witness stand and make your decision based only on that. Do you think you could do that?
JAMES PUMPHREY:
Yes.
From the foregoing and the remainder of Mr. Pumphrey's examination, we conclude that the trial judge did not abuse her discretion in denying the challenge for cause, since it is clear that James Pumphrey's answers indicate that he could render a fair and unprejudiced verdict.
As to appellant's second allegation of error involving the use of peremptory challenges after the jury had been empaneled but not sworn, we find it has no merit. By plaintiff's own admission, she had exhausted her peremptory challenges long before the final juror was selected. Likewise, her complaint regarding the refusal of the trial judge to allow her to "reserve" at least one peremptory challenge until after the jury was selected but before being sworn is meritless. This procedure is without precedent in our law and our knowledge and experience, and appellant cites no authority whatsoever for same.
We also find appellant's third alleged error without merit. Our reading of the voir dire transcript convinces us that the record is not grossly incomplete. Also, we are not persuaded by counsel's arguments that the failure to record bench conferences between the judge and counsel constitute "grave omissions" which require us to find the learned trial judge manifestly erroneous and to remand the case. Likewise, appellant has failed to demonstrate how the omission of the bench conferences with three prospective jurors prejudiced her case (two of these persons were challenged peremptorily and the third, Mr. Pumphrey, although seated, was extensively examined on the record). Furthermore, the cases cited by counsel are not on point since they involve failure to record entire transcripts or substantial portions of the testimony of witnesses.
Additionally, bench conferences, in our experience, nearly always are NOT recorded. Otherwise, why have a conference at the bench? Further, we do not feel that counsel for appellant is entitled to rely on his "assumption" that such usually nonrecorded conferences were being recorded. If it was that important to him, it was his duty to be sure.
As to appellant's other complaints in this regard, the transcript clearly shows that the trial court alternated between sides when making its inquiry as to whether either side wished to peremptorily challenge each juror in full compliance with La.C.C.P. art. 1766(B). Finally, the omitted discussion of which appellant specifically complains, that with Ms. Gomez, is of no import since Ms. Gomez was challenged and did not serve and, furthermore, plaintiff made no attempt to challenge the one juror sworn after Ms. Gomez was excused.
Accordingly, for the reasons stated, we affirm the judgment of the district court.
AFFIRMED.
NOTES
[1] In searching Louisiana jurisprudence for cases addressing alleged errors involving "challenges for cause" we find most of the reported cases arise out of criminal prosecutions. We, however, note that La.C.Cr.P. art. 797, which governs criminal challenges for cause, clearly parallels La.C.C.P. art. 1765. Therefore we consider the criminal cases applicable to the appeal before us.
[2] 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).