## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-71

TASHA TINGLE, ET AL.

VERSUS

AMERICAN HOME ASSURANCE
COMPANY, ET AL.

**consolidated with 10-72**

LEVI J. TINGLE, ET AL.

VERSUS

AMERICAN HOME ASSURANCE
COMPANY, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2006-5168 c/w 2007-1073, DIVISION D
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**OSWALD A. DECUIR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Marc T. Amy, and James T. Genovese, Judges.

**AFFIRMED AS AMENDED.**

James Ryan III
Timothy T. Roniger
Jeffery A. Clayman
James Ryan III & Associates, LLC
201 St. Charles Avenue, Suite 2530
New Orleans, LA 70170
(504) 599-5990
Counsel for Defendant/Appellant:
G. B. Boots Smith Corporation

**Raymond J. Pajares**
**E. Ashley Carter**
**Pajares & Schexnaydre, L.L.C.**
**68031 Capital Trace Row**
**Mandeville, LA 70471**
**(985) 292-2000**
**Counsel for Defendant/Appellant:**
        **Colony National Insurance Company**

**John E. Jackson**
**Jackson Law Firm**
**P. O. Box 1239**
**Lake Charles, LA 70602**
**(337) 433-8866**
**Counsel for Plaintiff/Appellee:**
        **Tasha Tingle**

**Troy Allen Broussard**
**Allen & Gooch**
**P. O. Drawer 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1370**
**Counsel for Defendant/Appellant:**
        **Brian S. Montgomery**

**Blake R. David**
**Broussard & David**
**P. O. Box 3524**
**Lafayette, LA 70502-3524**
**(337) 233-2323**
**Counsel for Plaintiff/Appellee:**
        **Levi Tingle**

**DECUIR, Judge.**

Brian S. Montgomery (Montgomery), his employer, G.B. Boots Smith Corporation (Boots Smith), and their excess insurer, Colony National Insurance Company (Colony), appeal a jury verdict awarding compensatory and exemplary damages to Tasha, Levi and Madison Tingle.

On March 5, 2006, Montgomery was driving a tractor trailer owned by his employer, Boots Smith. Montgomery drove the tractor trailer through a red light striking the Tingle vehicle. Tasha and Levi Tingle were injured, and their two-year-old daughter, Madison, was killed.

The Tingles filed suit seeking compensatory damages and subsequently exemplary damages. The Plaintiffs settled their claims against Montgomery and Boots Smith for the $1,000,000.00 policy limits of Boots Smith's primary liability insurer, American Home Assurance Company, reserving their right to proceed against their excess insurer, Colony, for any other damages covered by insurance.

The matter proceeded to trial, and the jury awarded roughly 10.8 million dollars in damages, of which five million dollars were exemplary damages. Defendants lodged this appeal, alleging numerous assignments of error.

## INCOMPLETE AND DEFICIENT RECORD

We first address the Defendants' assignment alleging that the trial court erred in allowing an incomplete and deficient record of the proceedings to be made. Specifically, the Defendants urge that the case be remanded for a new trial because the trial court erred in failing to grant a mistrial when it was discovered two and one-half days into the four-day trial that bench conferences had not been recorded. We disagree.

Article 1 of the Louisiana Constitution provides in pertinent part:

§ 19. Right to Judicial Review

> Section 19. No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived. The cost of transcribing the record shall be paid as provided by law.

While most often arising in the context of criminal proceedings, the protection is equally applicable to civil proceedings. As an appellate court, we must at all times be "keenly aware" of and "zealously protective of the rights of judicial review" granted by the constitution. *Something Irish Co. v. Rack*, 333 So.2d 773, 775 (La.App. 1 Cir. 1976).

In *Arnette v. NPC Services, Inc.*, 00-1776 (La.App. 1 Cir. 9/28/01), 809 So.2d 384, 386-87, the court explained why a complete record is crucial:

> In order to determine whether the trial court's interpretation of the evidence was correct, the evidence must be available to the reviewing court. Louisiana Code of Civil Procedure article 2132 allows the correction of an appellate record which omits a material part of the trial record; however, Article 2132 does not permit the introduction of new evidence after the transcript of the appeal is filed in the appellate court. Moreover, the court of appeal has no jurisdiction to receive new evidence. *Nickens v. Patriot Home Systems*, 97-0291 (La.App. 1 Cir. 2/20/98), 708 So.2d 1184, 1186. Pursuant to La. C.C.P. art. 2161, an appeal shall not be dismissed because the trial record is missing, incomplete or in error, no matter who is responsible, and the appellate court may remand the case either for a retrial or for correction of the record.

Plaintiffs argue that bench conferences are not required to be recorded and customarily they are not. They cite *Bernard v. Richoux,* 464 So.2d 856, 860 (La.App. 5 Cir. 1985), where the fifth circuit said:

> [B]ench conferences, in our experience, nearly always are NOT recorded. Otherwise, why have a conference at the bench? Further, we do not feel that counsel for appellant is entitled to rely on his "assumption" that such usually nonrecorded conferences were being recorded. If it was that important to him, it was his duty to be sure.

2

At first glance, this would appear to resolve the issue but for one critical distinction. Customarily bench conferences are not recorded because they deal with incidental matters regarding the administration of the trial rather than evidentiary rulings. This case is different. The court required counsel to approach the bench with their objections stating:

> We'll do it up here. And I want to minimize making the jury leave for anything that comes up during trial. We will try to handle it up here. We're not going to argue with each other. Lawyers can direct their arguments to me, not each other. And, you know, make an objection and I'll rule on it and we'll keep moving.

Given that it was customary in this judge's court to record bench conferences, this procedure was not particularly problematic. However, due to a change in court reporters, two and one-half days into the four-day trial, it was discovered that the bench conferences were not being recorded.

Defense counsel requested a mistrial which was denied. Counsel and the trial court argued about the number and significance of the unrecorded conferences. Finally, the trial court ordered defense counsel, over its objection, to attempt to recreate the unrecorded objections from memory. At the close of trial, defense counsel renewed its objection in the form of a motion for new trial which was denied by the trial court.

Nevertheless, our courts have consistently held that a defendant must point to specific prejudice regarding relevant evidence in order for the failure to record bench conferences to constitute reversible error. *State v. Hoffman*, 98-3118, 768 So.2d 542 (La. 4/11/00); *State v. Castleberry*, 98-1388 (La. 4/13/99), 758 So.2d 749, *cert. denied,* 528 U.S. 893, 120 S.Ct. 220 (1999); *State v. Brumfield*, 96-2667 (La. 10/20/98), 737 So.2d 660, *cert. denied*, 526 U.S. 1025, 119 S.Ct. 1267 (1999).

3

In this case, defense counsel was able to recall some of the unrecorded objections, some were partially captured through a second open microphone, and this court, in our review of the record, was able to ascertain the nature of some objections by the context because the court reporter did note when these unrecorded conferences took place. Moreover, defense counsel has not shown specific prejudice with regard to relevant evidence. Accordingly, though the practice of requiring objections to be made in bench conference has the potential for abuse, in this case, we find no reversible error.

## EXCLUSION OF EVIDENCE

Appellants contend that the trial court erred in excluding evidence of:

(1) Levi and Tasha Tingle's drug use the evening before the accident; and

(2) the terms of the *Gasquet* release and settlement;

The trial court is vested with vast discretion in connection with the admissibility of evidence. It will not be reversed absent an abuse of that discretion. *Maddox v. Omni Drilling Corp.*, 96-1673 (La.App. 3 Cir. 8/6/97); 698 So.2d 1022, *writ denied*, 97-2766, 97-2627 (La. 1/30/98); 709 So.2d 706.

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, the Code of Evidence, or other legislation. Evidence which is not relevant is not admissible. La.Code Evid. art. 402. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of an action more probable or less probable than it would be without the evidence. La.Code Evid. art. 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

4

or misleading the jury, or by considerations of undue delay, or waste of time." La.Code Evid. art. 403.

Appellants contend the trial court erred in excluding evidence that the Tingles used drugs the night before and in the early morning hours immediately before the accident. The Tingles respond that the relevance of the evidence is outweighed by its potential to prejudice the jury. Specifically, they argue that the Appellants stipulated liability and did not argue comparative fault. Moreover, they contend the Appellants point to no testimony where the alleged drug use would place the Tingles' credibility at issue. Finally, they note that the Tingles dropped their bystander claims and, therefore, their state of mind at the time of the accident was not at issue.

The trial court found the relevance of the evidence of the Tingles' drug use was outweighed by its potential to prejudice the jury. We find no abuse of discretion in the trial court's decision to exclude this evidence.

We next turn to the Appellants' contention that the trial court erred in excluding the terms of the *Gasquet* release and settlement.

Louisiana Code of Evidence Article 408(A) prohibits the admission of evidence concerning compromise or offers to compromise a disputed claim "to prove liability for or invalidity of the claim or its amount," but does not prohibit evidence that is otherwise admissible "merely because it is presented in the course of compromise negotiations" or when "the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." La.Code Evid. art. 408(A). Louisiana Code of Evidence Article 413 provides that, "[a]ny amount paid in settlement or by tender shall not be admitted into evidence unless the failure

5

to make a settlement or tender is an issue in the case." The comments made regarding Article 413 in the "Handbook on Louisiana Evidence Law" state in part:

> This Article was particularly designed to protect a plaintiff in a personal injury suit from the introduction of evidence that would inform the jury of the amount plaintiff received in settlement from other alleged tortfeasors, or the amount received by other claimants in settlement of their claims against the defendant, when the purpose of such evidence is to minimize the value of plaintiff's claim, or suggests that he has already received adequate compensation.

George W. Pugh, Robert Force, Gerald A. Rault, Jr., and Kerry Triche, *Handbook on Louisiana Evidence Law*, 410 (2008 ed.).

Appellants argue the trial court erred in excluding evidence of the *Gasquet* release and settlement because the case involves exemplary damages. Specifically, they contend the jury should have been informed that, because of the settlement, only an insurer was liable for damages awarded. We are unpersuaded by this argument and find no basis for an exception to La.Code Evid. arts. 408 and 413. The trial court did not abuse its discretion in excluding evidence of the *Gasquet* release and settlement.

## PREJUDICIAL CLOSING ARGUMENT

Appellants contend the trial judge erred in allowing Plaintiffs' counsel to implore the jury to put themselves in the Plaintiffs' shoes and to appeal to local prejudice by emphasizing that the Defendant was an out-of-state trucker. We disagree.

Appellants contend that Plaintiffs' counsel violated the so called "golden rule" by asking the jury to place itself in the Plaintiffs' shoes with regard to damages. They cite this court in *Duerden v. PBR Offshore Marine Corp.*, 471 So.2d 1111 (La.App. 3 Cir. 1985), *writ denied*, 476 So.2d 355 (La.1985), which said:

6

As the Court in *Burrage v. Harrell*, 537 F.2d 837 (5th Cir. 1976) said:

> "Appellant asserts that the trial court erred in overruling her objection to appellee's alleged 'golden rule' closing argument. Appellant's reliance on the 'golden rule' cases is misplaced: they deal with arguments in which the jury is exhorted to place itself in a party's shoes with respect to damages. See, e.g., *Skaggs v. J.H. Rose Truck Line, Inc.*, 435 F.2d 695 (5th Cir. 1970); *Har-Pen Truck Lines, Inc. v. Mills*, 378 F.2d 705, 714 (5th Cir. 1967). The rationale for prohibiting such an argument is that the jury's sympathy will be unfairly aroused, resulting in a disproportionate award of damages, e.g., *id.*; *Baron Tube Co. v. Transport Insurance Co.*, 365 F.2d 858, 862 (5th Cir. 1966)."

Likewise, Appellants contend that Plaintiffs' counsel impermissibly attempted to "home cook" the out-of-state Defendants in this case. They cite *Boutte v. Winn-Dixie Inc.*, 95-1123, p. 12 (La.App. 3 Cir. 4/17/1996), 674 So.2d 299, 306, in which this court said: "Although a litigant is afforded some license in closing argument, here Winn-Dixie, by deliberately resorting to local prejudice and unsupported generalities, clearly crossed its bounds."

In our view, neither *Duerden* nor *Winn-Dixie* should be viewed as establishing a bright line test for proper closing argument. We prefer to allow the trial court latitude to conduct a trial. In *Streeter v. Sears, Roebuck & Co.*, 533 So.2d 54, 62-63 (La.App. 3 Cir. 1988), *writ denied*, 536 So.2d 1255 (La.1989), this court said:

> In *Bourque v. Gulf Marine Transp., Inc.,* 480 So.2d 337 (La.App. 3 Cir. 1985), this court summarized the law governing argument before a civil jury as follows:
>
> > "The propriety of argument in a civil jury trial must be determined in the factual light of the particular matter, the conduct and atmosphere of that particular trial and the arguments of opposing counsel. *Luquette v. Bouillion*, 184 So.2d 766 (La.App. 3rd Cir. 1966). Great latitude is permitted in argument before a civil jury, subject to regulation by the trial court whose duty is to confine argument within proper bounds. *Temple v. Liberty Mutual*

7

> *Insurance Company*, 316 So.2d 783 (La.App. 1st Cir.1975), *reversed on other grounds*, 330 So.2d 891 (La.1976)*; Luquette, supra*. Unless the contrary is shown, the trial court's ruling regarding alleged improper argument are presumed to have been made within the trial court's discretion. *Luquette, supra.*" *Bourque v. Gulf Marine Transp., Inc.,* 480 So.2d 337, at page 342 (La.App. 3 Cir. 1985).

In the instant case, the Appellants made several objections to Plaintiffs' arguments which the trial court did not sustain. The trial court did not find the argument particularly inflammatory, but nevertheless instructed the jury not to base its award on emotion. We find no abuse of the trial court's great discretion in allowing the argument complained of in this case.

## EXEMPLARY DAMAGES

Appellants contend that the trial court erred in finding that the Plaintiffs had met their burden of proof for exemplary damages. Specifically, they argue that there was insufficient evidence to establish that Montgomery was intoxicated or impaired at the time of the accident. We disagree.

Until an appellate court determines that a fact-finder's conclusions are "clearly wrong" or "manifestly erroneous," the court should not redetermine the facts de novo from the record and render a judgment on the merits. *Ferrell v. Fireman's Fund Ins. Co.,* 94-1252, p. 4 (La. 2/20/95), 650 So.2d 742, 745 (La.1995). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be "manifestly erroneous" or "clearly wrong." *Watson v. State Farm Fire and Casualty Ins. Co.,* 469 So.2d 967, 972 (La.1985). When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the findings of the jury. *Rosell v. ESCO,* 549 So.2d 840, 844-45 (La.1989). Where a jury's findings are based on its decision to

credit the testimony of certain witnesses, the findings can virtually never be manifestly erroneous or clearly wrong. *Id.* We are instructed that before a jury's verdict may be reversed, we must find from the record that a reasonable factual basis does not exist for the verdict and that the record establishes that the verdict is manifestly erroneous. *Lewis v. State*, 94-2370 (La. 4/21/95), 654 So.2d 311.

The jury awarded exemplary damages under La.Civ.Code art. 2315.4, and Appellants argue the evidence did not support this award. To recover exemplary damages, the Plaintiffs must prove, by a preponderance of the evidence, three elements, including; (1) intoxication, (2) wanton and reckless disregard, and (3) cause-in-fact between the intoxication and the damages. La.Civ.Code art. 2315.4.

While Appellants' contention that the state trooper at the scene did not indicate that Montgomery was impaired is true, that alone is not sufficient to disturb the jury verdict. The jury also heard evidence regarding Montgomery's urine tests as well as evidence regarding his actions during the accident. After reviewing the record in its entirety, we cannot say the jury's decision to award exemplary damages was manifestly erroneous.

## EXCESSIVE DAMAGES

Appellants contend the jury abused its discretion and awarded excessive damages for wrongful death, past, present, and future lost wages, and exemplary damages.

The jury awarded Levi and Tasha Tingle each two million dollars ($2,000,000.00) in damages for their wrongful death claims. It is the appellants' position that under the facts of this case, the award was an abuse of the jury's discretion and is excessive under Louisiana law. The law regarding appellate review

9

of damage awards provides that the discretion vested in the trier of fact is "great."

*Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510

U.S. 1114, 114 S.Ct. 1059 (1994).

> Resorting to a comparison of prior awards is only appropriate after the reviewing court has concluded that an abuse of discretion has occurred. Thus, the initial inquiry for this court is whether the jury abused its discretion in assessing the amount of damages. If the court concludes that it has, then and only then may the prior awards be used for determining the highest or lowest amount that was reasonably within that discretion.

*Cone v. Nat'l Emergency Serv., Inc.*, 99-934, p. 8 (La. 10/29/99), 747 So.2d 1085,

1089 (citations omitted).

We are mindful that the Tingles' loss is great. Madison Tingle was the

Tingles' only child. Tasha's medical condition does not permit any more children.

Tasha Tingle was not able to attend Madison's funeral due to injuries sustained in the

accident. The Tingles will never see their child grow up. Nevertheless, we find the

jury abused its discretion in awarding each parent two million dollars ($2,000,000.00)

in wrongful death damages. Accordingly, we have reviewed prior awards and find

that the highest amount reasonably within the jury's discretion is $700,000.00 to each

parent. *See Estate of Francis v. City of Rayne*, 07-359 (La.App. 3 Cir. 10/03/07), 966

So.2d 1105, *writ denied*, 07-2119 (La. 2/15/08), 976 So.2d 176.

In *Thibeaux v. Trotter*, 04-482 (La.App. 3 Cir. 9/29/04), 883 So.2d 1128, *writ*

*denied*, 04-2692 (La. 2/18/05), 896 So.2d 31, this court discussed the burden of proof

and standard of review for special damages. The court said:

> The plaintiff bears the burden of proving entitlement to special damages by a preponderance of the evidence. *Hornsby v. Bayou Jack Logging*, 03-1544 (La.App. 3 Cir. 5/5/04), 872 So.2d 1244. An award of special damages is reviewed pursuant to the manifest error standard of review, unlike a general damage award which is reviewed pursuant to the abuse of discretion standard. *Id*. Thus, the "adequacy or inadequacy of the

award should be determined by the facts or circumstances of the case under consideration." *Id*. at 1248.

*Id.* at 1131.

Accordingly, we must first determine whether the jury was manifestly erroneous in awarding Tasha Tingle $300,000.00 in future lost wages/loss of earning capacity. We have reviewed the record and find the jury was presented with medical evidence of Tasha's continuing disability as well as testimony regarding Tasha Tingle's past wage rate of $7.00 per hour. The record also indicates that Tasha was twenty-five years old and had a work-life expectancy of forty-two years. We find no manifest error in the jury's award of $300,000.00 in past, present, and future lost wages.

Turning to the issue of excessiveness of the exemplary damage award, we note this court in *Leary v. State Farm Mut. Auto. Ins. Co.*, 07-1184, p. 10 (La.App. 3 Cir. 3/5/08), 978 So.2d 1094, 1101-2, *writ denied*, 08-727 (La. 5/30/08), 983 So.2d 900, said in pertinent part:

> Exemplary damages are given to plaintiffs over and above the full compensation for their injuries for the purposes of punishing the defendant, of instructing him not to repeat the offensive action, and of deterring others from following the defendant's conduct. *Mosing v. Domas*, 02-12 (La.10/15/02), 830 So.2d 967. "As with the review of a general damage award, the role of an appellate court in reviewing an award of exemplary damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact." *Id.* at 979.
>
> Again, Dobison's primary argument is that in comparison with the exemplary damages awarded in other, similar, cases the award in this case is excessive. But our supreme court has specifically said that when considering whether an award is excessive, the reviewing court is not to compare the exemplary damages with awards from other cases. *Id.* Instead, our supreme court has set out four criteria to be used in determining whether the finder of fact has abused its discretion in setting an award of exemplary damages: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the

harm suffered by the plaintiffs and the exemplary damages awarded; (3) the difference between the exemplary damages awarded and the civil or criminal penalties authorized or imposed in comparable cases; and (4) the defendant's economic wealth. *Id*.

In this case, the conduct is clearly reprehensible. Boots Smith hired Montgomery and allowed him to drive trucks without making basic inquiries about his driving record and prior drug use. Montgomery drove his massive tractor trailer rig while under the influence of drugs. The award is fully justified.

In *Mosing v. Domas*, 02-12 (La. 10/15/02), 830 So.2d 967, our supreme court approved a ratio of compensatory to exemplary damages that was 1 to 9. The Tingles, through settlement and our ruling today, were awarded approximately two and one-half million dollars ($2,500,000.00) in compensatory damages and five million dollars ($5,000,000.00) in exemplary damages, a ratio of almost 1 to 2. This ratio is appropriate in this case because there is greater potential harm that could have resulted from Booth Smith and Montgomery's conduct. Specifically, both Tasha and Levi could have also died as a result of Boots Smith and Montgomery's conduct.

A comparison of the exemplary damages awarded and the possible criminal or civil penalties that could have been imposed reveals a sizable discrepancy. In this case, Montgomery could have been charged with driving under the influence or vehicular homicide. Either offense, could result in a term of imprisonment; therefore, the fact that the monetary difference is large is not particularly persuasive. *See Mosing*, 830 So.2d 967.

Finally, we find the Defendants to have adequate economic wealth. After reviewing these factors and the record as a whole, we conclude that the jury did not abuse its discretion in making this award.

Appellants also contend that the trial court's award is excessive under the Due Process Clause of the 14th Amendment to the United States Constitution, and, therefore, this court's review should be de novo. However, we find they failed to raise this constitutional issue in the trial court, and therefore, it is waived. *Id.*

The appellants object to the trial court's failure to calculate legal interest in its judgment. We find no merit in this assignment.

Finally, Appellants contend that the trial court erred in allowing the Plaintiffs to amend their pleadings to include the claim for exemplary damages. We note that in a previous writ application to this court, Appellants made this same argument with regard to Plaintiffs' other claims and specifically mentioned that they were aware that an exemplary damage claim was looming. We found no merit to their writ application, and we find no merit to this assignment.

## DECREE

For the foregoing reasons, the judgment of the trial court is amended to reduce the wrongful death awards of Tasha and Levi Tingle from $2,000,000.00 each to $700,000.00 each. In all other respects the judgment of the trial court is affirmed. All costs of these proceedings are taxed to appellant, Colony National Insurance Company.

**AFFIRMED AS AMENDED.**

13